# EXHIBIT 1

1   PAUL J. SMOOT, SBN 160787
    LAW OFFICES OF PAUL J. SMOOT
2   1290 Howard Avenue, Suite 303
    Burlingame, California 94010
3   Telephone (650) 548-0900
    Facsimile  (650) 548-0901
4
    Attorneys for Plaintiffs
5   ANTHONY CARUSO & MARIA CARUSO

6

7                    SUPERIOR COURT OF CALIFORNIA

8                        COUNTY OF SANTA CLARA

9                        UNLIMITED JURISDICTION

10  ANTHONY CARUSO, an Individual;        )   Case No.
    MARIA CARUSO, an Individual,          )
11                                        )
                              Plaintiffs, )   COMPLAINT FOR DAMAGES,
12                                        )   REQUEST FOR TEMPORARY
                                          )   RESTRAINING ORDER &
         v.                               )   PRELIMINARY INJUNCTION AND
13                                        )   DECLARATORY RELIEF
    FNB BANCORP, a California Corporation, )
14  doing business as FIRST NATIONAL BANK )
    OF NORTHERN CALIFORNIA, a National    )
15  Banking Association;                  )
    FIRST AMERICAN TITLE INSURANCE        )
16  COMPANY, a California Corporation;    )
    RANDY BURGIONI, an Individual; and    )
17  DOES 1-10, Inclusive,                 )
                                          )
18                            Defendants. )
                                          )
19

20                          I. INTRODUCTION

21  1.   Plaintiffs Anthony Caruso and Maria Caruso obtained a loan on their home, 21670

22       Schillingsburg Avenue, San Jose, CA 95120, APN: 708-40-001 and 708-39-004, from

23       from defendant FNB Bancorp dba First National Bank of Northern California by and

24       through its defendant Randy Burgioni, their self-appointed real estate financial advisor,

25       who placed them in multiple loans without any ability to repay the loans.

26  2.   This is an action for rescission of an illegal and void Mortgage and Note to certain real

27       estate. This purported mortgage and note and the actions taken by Defendant contain

28       unfair trade practices and predatory lending practices.

                                          1

            COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
                 PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

3.   Plaintiffs allege upon information and belief the following:

4.   In prior years, predatory lending extracted billions of dollars of wealth from communities, depriving homeowners of their hard-earned equity and destroying the promise of financial security that is the cornerstone of homeownership. Predatory lenders target the equity, and ultimately the homes, of vulnerable homeowners by extending unaffordable loans packed with excessive fees and interest rates.

5.   In 2010, the Dodd-Frank Act ("Act") was passed with retroactive applications. Title X of the Act, known as the Consumer Financial Protection Act of 2010,  creates a new Bureau of Consumer Financial Protection (the "Bureau") and endows it with wide-ranging authority to issue new regulations, supervise institutions, enforce consumer financial services laws and regulations, analyze data from institutions through significant new data collection and reporting obligations, and otherwise prevent "abusive" conduct by lenders and other financial service firms. Title XIV, known as the Mortgage Reform and Anti-Predatory Lending Act, prohibits or restricts many previously common mortgage lending practices and limits a lender's ability to compensate loan officers and brokers. The Dodd-Frank Act also expands the role of state regulators over federally chartered institutions. In all, the Dodd-Frank Act will significantly limit lender practices and will substantially increase the risk that lenders and other financial service providers will face investigations and enforcement actions alleging discriminatory or abusive conduct affecting consumers.

6.   The nationwide foreclosure epidemic, caused by the bank's refusal to properly assess the risk involved compounded by the steering of homeowners has resulted in nearly three trillion dollars ($3,000,000,000) of tax payer money being given to the banking industry despite public outrage.  Foreclosures rates have skyrocketed with more than a projected double increase in foreclosure since last year, which was double the year before. Communities of various socio-economic resources have been drastically cut down, the landscape of vacant foreclosed homes affect 'wealthy' and 'poor' neighborhoods alike posing significant health and safety concerns.

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

7.     The authority of the Bureau under Section 1031 of the Dodd-Frank Act to take action to prevent unfair, deceptive or abusive acts or practices has broad policy implications. The Act also appears to give regulators broad authority to inquire about the consumer's knowledge of the terms of the loan under the new "abusive" standard. Indeed, Section 1031 contemplates that government intervention occur where a product or service takes "unreasonable advantage" of "the inability of the consumer" to protect his or her own interests. This provision is combined with the requirement that loan officers determine that borrowers have a reasonable ability to repay a loan before making the loan. In addition, Section 1403 amends TILA to require the Board of Governors to prohibit abusive or unfair lending practices.

8.     Ban on "Abusive" Acts or Practices. Section 1031 of the Act empowers the Bureau to prevent a covered institution from engaging in an "unfair, deceptive, or abusive act or practice in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service." Although "unfair" and "deceptive" acts or practices have been prohibited for some time under Section 5 of the Federal Trade Commission Act and similar state laws, the prohibition of "abusive" acts or practices is new.  According to the Act, the Bureau shall have no authority to declare an act or practice abusive in connection with the provision of a consumer financial product or service unless the act or practice (i) materially interferes with a consumer's ability to understand the product or service or (ii) takes unreasonable advantage of the consumer's lack of understanding, inability to protect his or her interests, or reasonable reliance on a covered person to act in the interests of the consumer. *Act § 1031(d).*

9.     Qualified Mortgages. The Act creates a safe harbor for compliance by defining an important new category of loans called "qualified mortgages." *Act § 1412.* For example, creditors and assignees may presume that qualified mortgages satisfy the requirement that loans be underwritten based on the borrower's ability to repay. The designation of a qualified mortgage, along with the safe harbor that it provides, is very important because

3

1   borrowers can raise inability to repay underwriting standards as a foreclosure defense

2   against creditors and assignees, without regard to any statute of limitations. *Act § 1414.*

3   10.   <u>Compensation Prohibitions and Steering Provisions.</u> Section 1403 of the Act amends the

4   TILA to prohibit loan originators from paying loan officers or brokers compensation that

5   varies based on the terms of the loan, other than the amount of the principal. Loan

6   originators also may not arrange for a consumer to finance any origination fees or costs

7   except bona fide third-party settlement charges not retained by the creditor or loan

8   originator. *Act § 1403.* These provisions are intended to prevent lenders from placing

9   borrowers in loans with rates and fees that are higher than appropriate in light of the

10   borrowers' qualifications. Additionally, the Act prohibits originators from steering

11   borrowers from a qualified mortgage to a non-qualified mortgage; to a loan that the

12   consumer lacks the ability to repay; and to a loan that has "predatory characteristics (such

13   as equity stripping, excessive fees or abusive terms)." *Act § 1403.* Violation of the ban on

14   steering incentives can be raised as a foreclosure defense by a borrower against a creditor

15   or assignee without regard to any statute of limitations. *Act § 1413.*

16   11.   <u>Ban on Originating Loans Where Borrower Has No "Reasonable Ability" to Repay.</u> One

17   of the most important provisions of the Act sets forth "minimum standards for residential

18   mortgage loans," one of which requires mortgage lenders to determine, "based on verified

19   and documented information," that the consumer has a "reasonable ability to repay the

20   loan." *Act § 1411.*

21   12.   Creditors are required to make the ability to pay determination based on the consumer's

22   credit history, income, obligations, debt-to-income ratio, employment status and other

23   information, utilizing a fully amortizing payment schedule, and lenders should document

24   their consideration of these factors. Like the ban on steering incentives, violation of the

25   ban on considering the borrower's ability to repay for underwriting can be raised as a

26   foreclosure defense by a borrower against a creditor or assignee without regard to any

27   statute of limitations. *Act § 1413.*

28

4

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

## II.  GENERAL ALLEGATIONS

13.  Plaintiffs ANTHONY AND MARIA CARUSO, at all times relevant have been the owners of 21670 Schillingsburg Avenue, San Jose, CA 95120, APN: 708-40-001 and 708-39-004, and the owner of the real property at issue herein.  Venue is proper in this Court, as the defendants are subject to litigation within its jurisdiction.

14.  Defendant FNB BANCORP, a California Corporation, doing business as FIRST NATIONAL BANK OF NORTHERN CALIFORNIA, a National Banking Association at all times herein mentioned was doing business in the State of California and was the lender for Plaintiff's Deed and Note.

15.  Defendant Bank is the lender on the subject property 21670 Schillingsburg Avenue, San Jose, CA 95120, APN: 708-40-001 and 708-39-004.

16.  Defendant FIRST AMERICAN TITLE INSURANCE COMPANY, a California Corporation, is the trustee and agent for Defendant Bank.

17.  Defendant RANDY BURGIONI is the agent for Defendant Bank, who as Vice-President of Bank was the broker for Bank and acting as its agent during the origination of the loan and at all times herein mentioned, and held himself out to plaintiffs as their financial advisor for real estate within Bank.

18.  Plaintiffs are ignorant of the true names and capacities of defendant sued herein as Does 1-10, inclusive, and therefore sues these defendants by such fictitious names and all persons unknown claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to plaintiff's title, or any cloud on Plaintiff's title thereto.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

19.  Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned each of the defendants sued herein was the agent and employee of each of the remaining defendants.  Plaintiffs allege that each and every defendant alleged herein ratified the conduct of each and every other defendant.  Plaintiff further alleges that at all times said defendants were acting within the purpose and scope of such agency and employment.

5

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

20.   At all times herein alleged there existed a fiduciary relationship between defendants, and each of them, and Plaintiff, who reposed their entire trust and confidence in defendants, and each of them.

21.   At all times herein alleged, Plaintiffs acted under a legal right or in a good faith belief in the existence of a legal right.

22.   At all times herein alleged Plaintiff acted in good faith and with clean hands in engaging in the acts, conduct or courses of action herein allege.

23.   Plaintiff's conduct at all times relevant hereto was entirely proper, diligent and in good faith.

24.   Defendant's, and each of them, are individually sued as participants and aiders and abettors in the wrongful activities complained of herein, and the liability of each arises from the fact that each has engaged in all or part of the improper acts, plans, schemes or transactions, which operated a fraud against the plaintiff.

25.   Plaintiff was referred to defendant FNB BANCORP, a California Corporation, doing business as FIRST NATIONAL BANK OF NORTHERN CALIFORNIA, a National Banking Association (hereinafter collectively referred to as "Bank") for a loan on White Road, San Jose, California. Whereupon he was introduced to Kathy Castor, a Bank employee with whom plaintiff worked on the White Road property and Schillingsburg construction loan. Once these loans were in place, plaintiff Anthony Caruso was solicited by Bank Vice-President Randy Brugioni. Defendant Brugioni held himself out as a senior financial advisor with such sophistication that as Vice President of Bank, he was routinely consulted by the Board, President Jim Black and Chief Financial Officer because of his financial acumen. Defendant Brugioni represented to Anthony Caruso that he, Brugioni, could and would act as plaintiff's financial advisor for real estate ventures.

26.   Plaintiff was quite satisfied with Ms. Castor's professionalism. Defendant Brugioni insisted he could better serve plaintiff's personal financial goals as his real estate advisor from "the inside." Defendant Brugioni brought a financial "deal" to plaintiffs that would set them up for their children's college and their retirement.

6

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

27. In 2007, defendant Brugioni went to plaintiff with an opportunity to solidify his "children's college education". Defendant Brugioni proposed Bank loan plaintiffs over $450,000 on the White Road, San Jose commercial property to purchase a commercial property on Santa Clara Street, San Jose. Defendant Brugioni went over with and discussed the proposed investment strategy for the Santa Clara Street commercial property and the investment analysis with White Road, San Jose.

28. Defendant Brugioni's conduct was quite different than other Bank employees, *i.e.*, Ms. Castor. Not only did Defendant Brugioni bring the "deal" to plaintiff, he analyzed the transactions and provided financial advice about future transactions for plaintiffs. For example, with the White Road, San Jose transaction, plaintiff specifically asked Bank - Brugioni if the financial scheme Brugioni proposed was a sound financial move for plaintiffs' future, particularly their children's college education. In response, defendant Brugioni selected the Santa Clara Street property for the 1031 exchange as the best investment of the three nominated for plaintiffs' "children's future". Plaintiffs went through with defendant Bank - Brugioni scheme to refinance White Road and purchase Santa Clara Street in reliance on Brugioni's analysis and advice.

29. Prior to Christmas 2008, the construction on Schillingsburg was completed. Upon completion, plaintiff submitted all the final paperwork on Schillingsburg and requested the construction loan be converted to a conventional loan. Defendant Bank, through defendant Brugioni, advised against converting the debt to a conventional loan and stated the terms would be restated until there was a more opportune time in the market.

30. In 2008/2009, plaintiffs ended up putting the Schillingsburg property up for sale because the economy was in dismal shape. The sale fell through when the Schillingsburg Buyer's bank, Downey Savings, withdrew its loan. During 2008 through 2010 plaintiffs were in constant contact with Bank - Brugioni. Plaintiffs met with Brugioni on at least three occasions from 2008 through 2010 to discuss plaintiffs' real estate investments and finances. Defendant Bank and defendant Brugioni were expressly told that plaintiffs had exhausted their savings and retirement accounts by March 2010.

7

31.  In April 2010 Bank, through Brugioni, converted the Schillingsburg 2007 construction loan to a conventional loan. In May 2010 plaintiffs had no active income to speak of, and over $50,000 in monthly mortgages with Schillingsburg, White Road, and Santa Clara Street, but defendant Brugioni told plaintiffs not to worry because he would make "shepherd" the conversion through personally. As a result of defendant Brugioni's personal attention to shepherding the loan through defendant Bank, plaintiffs were not required to complete a current, up-to-date loan application. Again, plaintiff Anthony Caruso discussed selling the Schillingsburg with defendant Brugioni. Defendant Brugioni advised against selling Schillingsburg in early 2010 and was rather persistent that he "shepherd" their conversion from the 2007 construction loan to a conventional loan even though plaintiffs had little income and had exhausted their savings and retirement accounts, and had no significant assets other than the three properties defendant Brugioni placed approximately $9 Million of loans.

32.  At no time did defendants assess plaintiffs' ability to pay based on their credit history, income, obligations, debt-to-income ratio, employment status and other information, utilizing a fully amortizing payment schedule, as required under the Act.

33.  Defendant Brugioni did not require the standard loan information. On or about April 28, 2010, Plaintiffs and Defendant Bank purported to execute a Note and Deed of Trust and supporting papers, purported loan number 122724 ("Mortgage"). The purported Mortgage was never provided to plaintiffs. When plaintiffs received their escrow documents they noticed certain documents were absent, but did not consider the matter because defendant Brugioni was shepherding their loan conversion. Defendant Bank failed and/or refused to provide plaintiffs with copies of important documents, including the complete Mortgage, which would explain their consumer rights, as well as other rights, including but not limited to, the right to cancel the contract, 3-Day Notice of Rescission as required under TILA. *See* 15 USC §§ 1601, *et seq.*, including §§ 1635, 1639 and 1640, and the Federal Truth in Lending Disclosures.

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

34. In August 2010 it seemed that plaintiffs' luck had turned. They were back in the construction business with a big job. The job came to an end abruptly on or about September 2011. They started making partial payments on the mortgages hoping things would turn around.

35. In hopes to keep their home and real estate investments, plaintiffs contacted Bank - Brugioni about the short fall and inquired about the possibility of obtaining a loan modification.

36. As of September 2011, plaintiffs were, effectively, in the same financial condition as they were in May 2010 when Bank - Brugioni loaned $2.9 Million on Schilllingsburg.

37. In November 2011, plaintiffs met with Bank-Brugioni. Plaintiffs advised Bank-Brugioni that they were falling behind because of the lost job. They were making partial payments on the approximate $50,000 in debt service. Bank-Brugioni specifically stated that once the properties were appraised that Bank would work to modify the loans down to 4%, but no final - formal - agreement could be in place before the end of the year, *i.e.*, 2011.

38. While plaintiffs' father was in the hospital, plaintiffs received notice that Bank filed a lawsuit and demanded a receiver be installed regarding the two commercial properties - White Road, San Jose and Santa Clara Street, San Jose. When confronted by plaintiffs Brugioni said his boss, Jim Black, forced the Receivership.

39. Thereafter, Bank-Brugioni repeatedly represented to plaintiffs that a modification was available if they would sell one of their commercial properties, also financed by Bank. All three properties were put up for sale. However, plaintiffs are informed and believe and thereon allege that Bank, and its trustees and agents, had no intention of modifying plaintiffs' loan and fraudulently induced us to rely on the proposed modification.

40. Once one property [Santa Clara Street] was in contract and there was an appearance that Schillingsburg was being marketed aggressively to sell, Bank ordered Notices of Default to be recorded to subvert any possibility of selling the Schillingsburg and the other properties.

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

41.   Schillingsburg was being marketed for $5.8 Million. After the Notice of Default, no one came near the property. The price was reduced to $3.9 Million. Bank - Brugioni knew the Notice of Defaults were the "kiss of death" to the sale of our property - he had used that same phrase in 2007 when referring to other properties Bank held notes and deeds of trust on and again in 2009.

42.   Santa Clara Street was finally sold. Bank - Brugioni immediately recanted the offer to modify and stated that $200,000 additional money was needed to modify the remaining two loans, one being Schillingsburg. Defendants then followed the Notice of Default with a Notice of Trustee's Sale setting a sale date of October 4, 2012.

43.   Plaintiffs' credit score will decrease if their home is sold at trustee's sale. Further, if Plaintiffs' home, Schillingsburg, is sold at trustee's sale, they will forfeit their interest in their property. Plaintiff is willing to reduce the price of their home, and based upon comparable properties in the area could obtain a price higher than the current amount owed - listed by the trustee, First American Title Insurance Company.

44.   Plaintiffs further allege that defendants will claim the loan is in default and has accelerated the Note.  However, no modification was offered by the Bank and significant errors have miscalculated the amount of the total debt owed, the monthly payments, and on the face of the Bank's instruments the calculation did not correspond to its own figures. Defendant Bank invalidated the Notice by its own errors, which infer that it has not properly accounted for any of the payments.

45.   A party seeking to foreclose bears the burden of demonstrating standing and must plead its component with specificity, and must demonstrate that it was the holder and owner of the note and Deed of Trust as of the date of foreclosure.  As otherwise provided in California Commercial Code Section 3302, a "holder in due course" means the holder of an instrument if: (1) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and (2) The holder took the instrument: (a) for value; (b) in good faith; (c) without notice that the instrument is overdue or has

10

1    been dishonored or that there is an uncured default with respect to payment of another

2    instrument issued as part of the same series; (d) without notice that the instrument contains

3    an unauthorized signature or has been altered; (e) without notice of any claim to the

4    instrument described in California Civil Code Section 3306; and (f) without notice that

5    any party has a defense or claim in recoupment described in subdivision (a) of Section

6    3305.

7  46.  Plaintiffs, maintain, on information and belief that there have been numerous

8       improprieties in the appointment of Trustees in the handling of their loan, and the alleged

9       trustee is not properly appointed as foreclosing trustee nor acting in conformity with law.

10 47.  Plaintiffs thereby allege that if the threatened foreclosure sale of the subject home occurs it

11      will be the result of failed notices as only unauthorized parties are available to defendants

12      and thus it cannot be executed in accordance with the requirements of California Civil

13      Code § 2924, § 2923.5 and § 2923.6.

14 48.  Plaintiff alleges that defendants, and each of them, are engaged in and continue to engage

15      in violations of California law including but not limited to: California Civil Code § 2924,

16      § 2923.5 and unless restrained will continue to engage in such misconduct, and that a

17      public benefit necessitates that Defendants be restrained from such conduct in the future.

18 49.  Plaintiffs also seek recovery for damages for non-disclosure of their right to cancel,

19      non-disclosure of certain Truth in Lending disclosures and Federal violations of numerous

20      consumer rights.

21                              **FIRST CAUSE OF ACTION**
   (UNFAIR TRADE PRACTICES INVOLVING NON-COMPLIANCE, 15 U.S.C. §§ 1601, ET. SEQ.)

22

23 50.  Plaintiffs reallege paragraphs 1 through 49 as though fully set out and incorporated by

24      reference herein.

25 51.  The Mortgage documents were not given to Plaintiff by defendant Bank and DOES 1-10,

26      after escrow, and after plaintiffs had purported to sign the documents.

27 52.  The above-mentioned constitutes a false representation of the settlement agreement.

28

                                        11
   COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
            PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

53. As a direct, proximate, and foreseeable result of Defendants' actions, plaintiffs are subject to loss of property and loss of use of property and other damages.

Wherefore, plaintiffs pray judgment against defendants, and each of them, as more particularly set forth below;

### SECOND CAUSE OF ACTION
#### (MISSING STATEMENTS, 15 U.S.C. §§ 1635, ET. SEQ.)

54. Plaintiffs reallege paragraphs 1 through 53 as though fully set out and incorporated by reference herein.

55. The two required statements under 15 U.S.C. 1639(a) (1) (A) and (B) are completely missing.

56. Defendant Bank and DOES 1-10 also failed and /or refused to meet the disclosure requirements of Section 1635, by not providing the notice/disclosure or filing it before during or immediately after the settlement, as required under this statute.

57. As a direct, proximate, and foreseeable result of the failure to provide proper notice, plaintiffs are subject to loss of property and loss of use of property and other damages.

Wherefore, plaintiffs pray judgment against defendants, and each of them, as more particularly set forth below;

### THIRD CAUSE OF ACTION
#### (MISSING DISCLOSURE STATEMENTS, 15 U.S.C. §§ 1638, ET. SEQ.)

58. Plaintiffs reallege paragraphs 1 through 57 as though fully set out and incorporated by reference herein.

59. The required disclosure statements are completely missing under 15 USC 1638(a)(2)(B) (a)(9), (a)(11) and (a)(12) and Regulation Z, Part 226.17 et seq.

60. Defendant Bank and DOES 1-10 failed and /or refused to meet the disclosure requirements of Section 1638, by not providing the disclosure or causing its filing before during or immediately after the settlement, as required under this statute.

61. As a direct, proximate, and foreseeable result of the failure to provide proper notice, plaintiffs are subject to loss of property and loss of use of property and other damages.

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

1    Wherefore, plaintiffs pray judgment against defendants, and each of them, as more

2  particularly set forth below;

### FOURTH CAUSE OF ACTION
**(DISCLOSURE VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.)**

5   62.   Plaintiffs reallege paragraphs 1 through 61 as though fully set out and incorporated by

6          reference herein.

7   63.   The Federal Reserve Board Interpretation, Title 12 Code of Federal Regulations Part 226,

8          Supplement I, Paragraph 23(a)(1), provides that in the present case the transaction is

9          rescindable for reasons above and below stated.

10  64.   The disclosures made in relation to the consumer credit transaction were not presented in

11         the manner required by law. Furthermore, the disclosures were not grouped together and

12         were not segregated from everything else as required by Title 12 Code of Federal

13         Regulations, Section 226.17(a)(1) and in this case were not given at all.

14  65.   As a direct, proximate, and foreseeable result of the failure to provide proper notice,

15         plaintiffs are subject to loss of property and loss of use of property and other damages.

16         Wherefore, plaintiffs pray judgment against defendants, and each of them, as more

17  particularly set forth below;

### FIFTH CAUSE OF ACTION
**(RIGHT TO RESCIND VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.)**

20  66.   Plaintiffs reallege paragraphs 1 through 65 as though fully set out and incorporated by

21         reference herein.

22  67.   The right to rescind or cancel settlement document was not disclosed or given, as required

23         by Title 12 Code of Federal Regulation, Section 226.18 et seq.

24  68.   As a direct, proximate, and foreseeable result of the failure to provide proper notice,

25         plaintiffs are subject to loss of property and loss of use of property and other damages.

26         Wherefore, plaintiffs pray judgment against defendants, and each of them, as more

27  particularly set forth below;

28

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

**SIXTH CAUSE OF ACTION**
**(RIGHT TO CANCEL VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.)**

69.   Plaintiffs reallege paragraphs 1 through 68 as though fully set out and incorporated by reference herein.

70.   There was no separate form to cancel, as required by Title 12 Code of Federal Regulation, Section 226 et seq.

71.   As a direct, proximate, and foreseeable result of the failure to provide proper notice, plaintiffs are subject to loss of property and loss of use of property and other damages.

Wherefore, plaintiffs pray judgment against defendants, and each of them, as more particularly set forth below;

**SEVENTH CAUSE OF ACTION**
**(DISCLOSURE VIOLATIONS, PURSUANT TO TITLE 15 U.S.C. SECTION 1601, ET. SEQ. AND REGULATION Z)**

72.   Plaintiffs reallege paragraphs 1 through 71 as though fully set out and incorporated by reference herein.

73.   Since this action was commenced, Defendant Bank and DOES 1-10 have continued and so continue to violate the Consumer Credit Protection Act, Title 15 United States Code, Section 1601 et seq., and Regulation Z, Title 12 Code of Federal Regulations, Part 226, which was adopted pursuant to such Act, by failing to properly make the disclosures required by the Act and Regulation Z, as herein after more particularly set forth.

74.   As a direct, proximate, and foreseeable result of the failure to provide proper notice, plaintiffs are subject to loss of property and loss of use of property and other damages.

Wherefore, plaintiffs pray judgment against defendants, and each of them, as more particularly set forth below;

**EIGHTH CAUSE OF ACTION**
**(FAILURE TO PROVIDE COPIES OF MORTGAGE, IN VIOLATION OF 15 USC SECTION 1601, ET. SEQ.)**

75.   Plaintiffs reallege paragraphs 1 through 74 as though fully set out and incorporated by reference herein.

14

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

76.   Defendant Bank and DOES 1-10 failed to give to plaintiffs signed copies of the complete Mortgage package as required by 15 U.S.C. §§ 1601 et seq. within a reasonable amount of time or never during the entire period of the Loan Agreement.

77.   As a direct, proximate, and foreseeable result of the failure to provide proper notice, plaintiffs are subject to loss of property and loss of use of property and other damages.

Wherefore, plaintiffs pray judgment against defendants, and each of them, as more particularly set forth below;

## NINTH CAUSE OF ACTION
### (FAILURE TO GIVE 3 DAY COOLING PERIOD, IN VIOLATION OF 15 USC SECTION 1601, ET. SEQ. AND REGULATION Z)

78.   Plaintiffs reallege paragraphs 1 through 77 as though fully set out and incorporated by reference herein.

79.   Defendant Bank and DOES 1-10 failed to give to plaintiffs the required 3 day cooling off period, as required by Regulation Z and 15 U.S.C. §§ 1601 et seq.

80.   As a direct, proximate, and foreseeable result of the failure to provide proper notice, plaintiffs are subject to loss of property and loss of use of property and other damages.

Wherefore, plaintiffs pray judgment against defendants, and each of them, as more particularly set forth below;

## TENTH CAUSE OF ACTION
### (FAILURE TO GIVE CONSPICUOUS WRITINGS, IN VIOLATION OF 15 USC SECTION 1601, ET. SEQ. AND TITLE 12 CODE OF FEDERAL REGULATIONS, SECTION 226.18)

81.   Plaintiffs reallege paragraphs 1 through 80 as though fully set out and incorporated by reference herein.

82.   By reason of the foregoing, Defendant Bank and DOES 1-10 have failed to make the disclosures required by 15 U.S.C. §§1601 et seq. and Title 12 Code of Federal Regulations, Section 226.18, clearly and conspicuously in writing, in a form that Defendants could keep as required by 15 U.S.C. §§1601 et seq. and Title 12, Code of Federal Regulations, Section 226.18. As a proximate result of the foregoing, the Plaintiffs have the right to rescind the entire transaction.

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

83.   As a direct, proximate, and foreseeable result of the failure to provide proper notice, plaintiffs are subject to loss of property and loss of use of property and other damages.

Wherefore, plaintiffs pray judgment against defendants, and each of them, as more particularly set forth below;

## ELEVENTH CAUSE OF ACTION
### (INJUNCTIVE RELIEF - TRO and Preliminary Injunction)

84.   Plaintiffs reallege paragraphs 1 through 83 as though fully set out and incorporated by reference herein.

85.   Plaintiffs have been and will be seriously injured unless Defendant Bank's foreclosure and other activities complained of are temporarily restrained and preliminarily and permanently enjoined. Plaintiffs will suffer irreparable injury of a continuing nature that cannot be adequately calculated or compensated in money damages, in that plaintiffs will lose their home, a unique property.

86.   Plaintiffs further seek an injunction to enjoin defendants from keeping relevant documents such as, complete loan package, but not limited thereto, and to forward all relevant foreclosure documents to plaintiffs.

Wherefore, plaintiffs pray judgment against defendants, and each of them, as more particularly set forth below;

## TWELFTH CAUSE OF ACTION
### (CONSTRUCTIVE FRAUD - BREACH OF FIDUCIARY DUTY)

87.   Plaintiffs reallege and incorporate by reference Paragraphs 1 through 86 as though fully set forth herein.

88.   Plaintiffs obtained several loans through defendant Bank, including a construction loan on their home (Schillingsburg) that was re-stated on multiple occasion sand then converted into a conventional loan.

89.   Defendants Bank and Brugioni and DOES 1-10, and each of them, by and through their conduct, including, but not limited to, (a) their acts and omissions to act, and (b) their

16

1    representations and concealment of facts, created a duty to plaintiffs and owed a duty to

2    plaintiffs based thereon.

3    90.    Defendant Bank, by and through its agent and employee, Defendant Brugioni, acted

4    outside the scope of a traditional lender. Defendant Bank, by and through its agent and

5    employee, Defendant Brugioni, represented itself as and held itself out as plaintiffs'

6    financial advisor. Not only did Brugioni identify, recommend and facilitate (1) investment

7    strategies, and (2) real property purchases for plaintiffs, he directed and/or completed the

8    loan documentation required for underwriting and appraisals.

9    91.    As more particularly set forth above, Defendants Bank and Brugioni actively solicited

10    plaintiffs.  Defendants Bank and Brugioni pro-actively gave investment advice and

11    investment analysis, contrary to a mere lender of money as Bank had previously conducted

12    itself in 2006, prior to Brugioni active solicitation of plaintiffs.

13    92.    Defendants conduct was intended to create, and in fact did create, a relationship of

14    confidence and trust with plaintiffs. Plaintiffs reposed trust and confidence in defendants,

15    as was defendants' intent evidenced by defendants conduct. As such, defendants were

16    required to use utmost care, skill, and diligence in the performance of defendants duties

17    and obligations as financial advisor to plaintiffs, including, but not limited to, making the

18    ability to pay determination based on the plaintiffs' credit history, income, obligations,

19    debt-to-income ratio, employment status and other information, utilizing a fully

20    amortizing payment schedule.

21    93.    Despite having voluntarily accepted the trust and confidence of plaintiffs with regard to

22    real estate investments intended to finance the college educations for plaintiffs' children

23    and plaintiffs' retirement, and in violation of this relationship of trust and confidence,

24    defendants abused the trust and confidence of plaintiffs by failing to disclose plaintiffs'

25    inability to re-pay the loans held by Defendant Bank.

26    94.    The terms of the Mortgage which were pre-printed documents that Defendants presented

27    to Plaintiff for final signature with no opportunity to negotiate their terms, are so one sided

28    as to be abusive and unconscionable. Defendants exploited their superior bargaining

17

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

1   power to induce Plaintiffs to executed a mortgage loan and enter into a highly

2   disadvantageous loan.  Said procedural and substantive unconscionability renders the

3   Deed of Trust void and unenforceable.

4   95.   Plaintiffs further allege that Defendants, and each of them, had a duty and obligation to

5   represent accurately, truthfully, and completely disclose all the information that Plaintiffs

6   relied upon in performing their investigation, consideration, and evaluation of whether to

7   obtain additional mortgage financing, alternative mortgage financing and/or selection of

8   refinancing for the subject property.  Defendants breached their duty and obligation to

9   provide accurate, truthful and complete information by failing to provide the necessary

10   information to Plaintiff in a manner that he would understand, considering the latter's

11   limited access to information, and they failed to provide the information necessary for

12   Plaintiff to make a complete accurate and thoughtful decision on these financial issues, all

13   of which caused them damage.  Plaintiff relied upon the misrepresentation of Defendants

14   in forming his decision regarding the loan transaction at issue.  Under California Civil

15   Code which states that a person who, with intent to defraud a participant in mortgage

16   lending transaction; (a) knowingly makes a false statement or misrepresentation made by

17   another person concerning a material fact deliberately conceals  or fails to disclose a

18   material fact, (b) knowingly uses or facilitates the use of a false statement or

19   misrepresentation made by another person concerning a material fact or deliberately uses

20   or facilitates the use of another person's concealment or failure to disclose a material fact.

21   (c) Receives any proceeds or any other money in connection with a mortgage lending

22   transaction that the person knows resulted from a violation of par. (a) or (b). (d) Conspires

23   with another person to violate any provision of par. (a)(b) or (c) files or causes to be filed

24   with a County Recorder any document that the person knows to include a misstatement,

25   misrepresentation or omission concerning a material fact.

26   96.   Plaintiffs further allege that Defendants, and each of them, falsely misrepresented that the

27   Notice of Default was validly executed, that they intended to induce plaintiffs into relying

28   on the misrepresentation, that they knew at the time they made these representation to

18

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

1    Plaintiffs that they were untrue, and defendants know at the time that they were attempting

2    to foreclose on Plaintiffs' Trust Deed and notes that they had no right to do so.

3    97.   In connection with the application for and consummation of the mortgage loan the subject

4    of this action, Defendants agreed, between and among themselves, to engage in actions

5    and a course of conduct designed to further an illegal act or accomplish a legal act by

6    unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to

7    defraud the Plaintiffs.

8    98.   Defendants, and each of them, agreed between and among themselves to engage in the

9    conspiracy to defraud for the common purpose of accruing economic gains for themselves

10   at the expense of and detriment to the Plaintiffs.

11   99.   As a direct, proximate, and foreseeable result of the failure to provide proper notice,

12   plaintiffs are subject to loss of property and loss of use of property and other damages.

13   100.  Defendants conduct as set forth above was intentional, oppressive, fraudulent and

14   malicious so as to justify an award of punitive damages in an amount sufficient that such

15   conduct will not be repeated.

16   Wherefore, plaintiffs pray judgment against defendants, and each of them, as more

17   particularly set forth below;

## THIRTEENTH CAUSE OF ACTION
### (NEGLIGENCE)

20   101.  Plaintiffs reallege paragraphs 1 through 100 as though fully set out and incorporated by

21   reference herein.

22   102.  Defendants Bank, Brugioni and DOES 1-10 had a duty to exercise due care in making

23   recommending and facilitating loans to plaintiffs to insure plaintiffs had the ability to

24   repay the loans, among other duties created by defendants' affirmative conduct.

25   103.  Defendants, and each of them, had a duty and obligation to represent accurately, truthfully,

26   and completely all the information that Plaintiff relied upon in performing their

27   investigation, consideration, and evaluation of whether to obtain additional mortgage

28   financing, alternate mortgage financing, and / or selection of refinancing for the subject

19

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

1   property. Defendants breached their duty and obligation to provide accurate, truthful and

2   complete information by failing to provide the information to Plaintiff in a manner that he

3   would have understood and they failed to provide all the information necessary for

4   Plaintiffs to make a complete accurate and well thought decision on these financial matter,

5   all which caused them damage.

6   104.   Plaintiffs relied upon the representations of the Defendants informing their decision

7   regarding loan transactions.

8   Wherefore, plaintiffs pray judgment against defendants, and each of them, as more

9   particularly set forth below;

10                          **FOURTEENTH CAUSE OF ACTION**
                                   **(QUIET TITLE)**
11

12   105.   Plaintiffs reallege paragraphs 1 through 100 as though fully set out and incorporated by

13   reference herein.

14   106.   The purpose of quiet title is to establish title against adverse claims to real property or any

15   interest in the Real Property (Code of Civil Procedure of California 760.020).

16   107.   The basis of PlaintiffS interest in title is a Deed of Trust from Defendants, granting the

17   Subject Property to Plaintiff, and recorded in the Official Records of the County of Santa

18   Clara.

19   108.   Plaintiffs are seeking to quiet title against the claims of Defendants Bank, First American

20   Title Insurance Company and DOES 1-10.

21   109.   Plaintiff s therefore seek a judicial declaration that the title to the subject property is vested

22   in Plaintiffs alone and the Defendants, and each of them, be forever enjoined from

23   asserting any estate, right, title, or inters tint he Subject property, adverse to the Plaintiffs

24   herein, or, alternatively, the Mortgage is void.

25   Wherefore, plaintiffs pray judgment against defendants, and each of them, as more

26   particularly set forth below;

27

28

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

## FIFTEENTH CAUSE OF ACTION
### (VIOLATION OF CALIFORNIA CIVIL CODE § 1572)

110. Plaintiffs reallege paragraphs 1 through 100 as though fully set out and incorporated by reference herein as though fully set forth herein against each and every defendant.

111. Although Plaintiffs were successful General Contractors, plaintiffs reasonably relied upon Defendants which was reasonable and consistent with the Congressional intent and purpose of California Civil Code § 1572 enacted in 1872 and designed to assist and protect consumers similarly situated as Plaintiffs in this action.

112. Defendants misrepresentations and failures to disclose, as described above were made with the intent to induce Plaintiffs to obligate themselves in reliance on the integrity of Defendants.

113. Plaintiffs could not have discovered the true nature of the material facts on their own. Defendants failed to inform Plaintiff that based solely on a stated income, credit rating, and the ration of assets and liabilities that they could not and would not qualify for the subject loan. Plaintiff's income was never truly verified so much so that in this context, it made the latter believe that their income was sufficient to repay the loan. A determination of whether Plaintiff would be able to make the payments as specified in the loan documents was never truly made, and the required credit investigation apparently was not conducted.

114. Plaintiffs were ignorant of the facts which Defendants misrepresented and failed to disclose and their reliance was a substantial factor in causing their harm. Plaintiff was not informed adequately about the full terms and/or possible consequences of their loan agreement. Plaintiff was not informed of the following but not limited to: the risks and advantages of the loan; or the inflated valuation of the property.

115. Plaintiff s alleges that Defendants Bank, Brugioni and DOES 1-10 had a duty to disclose to Plaintiffs that they could not qualify for the subject loan, but instead failed to disclose this information to Plaintiffs. Defendants failed to make such disclosure while knowing they would foreclose on the Properties if, or when, Plaintiffs defaulted on the loans.

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

116. Plaintiffs allege that Defendants had exclusive knowledge of the material fact that Plaintiff should not have qualified for the loan with monthly payments that would, and did, outstrip Plaintiffs financial ability to generate revenue. Had the real fact been known, Plaintiff would not have obligated themselves to a loan that they could not realistically afford.

117. As a proximate result of Defendants, Plaintiff s have suffered damage in an amount to be determined at trial.

118. The conduct of Defendants as mentioned above was fraudulent within the meaning of California Civil Code § 3294(c)(3), and by virtue thereof Plaintiff is entitled to an award of punitive damages in an amount sufficient to punish and make an example of the Defendants.

Wherefore, plaintiffs pray judgment against defendants, and each of them, as more particularly set forth below;

## SIXTEENTH CAUSE OF ACTION
### (VIOLATION OF CALIFORNIA CIVIL CODE § 2923.5)

119. Plaintiffs reallege paragraphs 1 through 100 as though fully set out and incorporated by reference herein as though fully set forth herein against each and every defendant.

120. Defendants cannot maintain any action for possession, nor the threatened non-judicial foreclosure proceeding which it commenced because defendants cannot strictly comply with tenets of California Civil Code § 2923.5 and § 2924.

121. This State's legislature enacted SB 1134-1137 in an effort to impact residential mortgage lenders, foreclosure procedures and eviction procedures, and it amends provisions of the foreclosure procedures found in California Code of Civil Procedure § 2924, by adding requirements for meetings, due diligence, and notification of counseling. This change imposes an unprecedented duty on lenders relating to contact with borrowers.

California Civil Code § 2923.5

122. As of yet, California Civil Code § 2923.5 applies to loans made from January 1, 2003 to December 31, 2007, and loans secured by residential real property that are for owner occupied residences. For purposes of California Civil Code § 2923.5, "owner occupied"

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

means that the residence is the principal residence of the borrower, as is the case at bar. Prior to filing a Notice of Default, California Civil Code § 2923.5 provides in pertinent part:

(a)(1) a trustee may not file a notice of default pursuant to Section 2924 until 30 days after contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g). In either case, the borrower shall be provided the toll free telephone number made available by the Untied States Department of Housing and Urban development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically. (2)An authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the borrower to avoid foreclosure. During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days.

123. The purpose of assessing the financial situation of a homeowner was turned into a mockery by the miscalculated financials of the homeowner after the homeowner expressly raised their concerns and then was not given any options in order to avoid foreclosure.

124. Defendant in failing to confer with Plaintiffs herein, as owner of record of the subject property, and further, in failing to provide Plaintiff with notice of the current condition of title, did violate portions of the following provisions of the California Civil Code, Sections 2923.5; 2923.52; 2923.54; 2924(b). As a result of such breach by Defendants, and each of them, Plaintiff has suffered damages.

125. Plaintiff is informed and believes and thereon alleges that the Notice, and the threat of future notices and foreclosure are invalid and unenforceable due to the intentional and

---

23

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

1    willful violations including but not limited to, failing and/or refusing to mail

2    correspondences with proper calculations to plaintiffs as requested.

3    126.   Defendants did not fully comply with California Civil Code § 2923.5, given the active

4    stance the homeowner has undertaken to secure a proper calculation of their mortgage and

5    therefore any potential Notice of Default is VOID.  Thus if the property is sold in a

6    nonjudicial foreclosure, the procedure is also void.

7    127.   At all times herein alleged there existed a fiduciary relationship between defendants, and

8    each of them, and Plaintiff, who reposed their entire trust and confidence in defendants,

9    and each of them.

10    128.   Plaintiffs were the purchasers of the subject property to all terms and conditions contained

11    in the Promissory Note and Deed of Trust executed by them.  Defendants implied contract

12    with Plaintiff to ensure that Plaintiffs understood all fees, which would be paid to the

13    Defendants to obtain credit on Plaintiffs behalf and to not charge any fees which were not

14    related to the settlement of the loan and without full disclosure to Plaintiffs.

15    129.   Plaintiff performed all required acts under the various agreements with Defendants, and

16    each of them, except for those acts which the Defendants prevented them from

17    accomplishing.  Defendants cannot, in good conscious and equity, retain the benefits from

18    their actions of charging fees, rebates, kickbacks (including but not limited to profits from

19    sale of mortgages and notes using Plaintiffs' identity, credit score and reputation without

20    consent, right, justification or excuse as part of an illegal enterprise scheme) and gains and

21    fees unrelated to the settlement of services provided.

22    130.   Defendants, and each of them, breached the terms of the said agreement by their conduct,

23    as aforesaid, to the detriment of the Plaintiffs herein.

24    131.   As a direct and proximate result of the actions of Defendants, and each of them Plaintiff

25    has suffered damages, including cost and attorneys fees, in an amount which is not

26    currently known but subject to proof at the time of trial.

27

28

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

132. Defendants, and each of them, failed to exercise good faith in the performance of the obligations, including but not limited to, their failure to perform their duties and obligations.

133. Defendants and each of them sought to take unfair advantage of their special relationship with Plaintiff through misfeasance, misrepresentation, and/or fraud. Such acts by defendants were willful, wanton, malicious, and oppressive and were undertaken with an intent to injure Plaintiffs and justify the awards sought under this complaint.

134. Defendants have been unjustly enriched at the expense of Plaintiff, and the maintenance of the enrichment would be contrary to the rules and principles of equity.

135. Defendant at all times herein allege was a fiduciary of Plaintiff in that Plaintiff reposed their entire confidence and trust in Defendant.

136. The Plaintiff was justified in believing that the defendant would take no unwarranted action that would compromise and/ or jeopardize the right of the Plaintiff.

137. Plaintiff alleges that Defendant, in performing and omitting to perform the acts herein alleged, breached the fiduciary duty owed by it to Plaintiff by failing to perform its duties, and in the acts hereinbefore complained of.

138. Defendant did such acts by violating the fiduciary duty owed to Plaintiff, violating the aforesaid Civil Code, and did so strictly for the benefit to said Defendant, and to the detriment of Plaintiff.

139. That as a direct and proximate result of the breach of the fiduciary agreement, there is currently due from Defendants, and each of them, to this Plaintiff, a balance which is presently unknown, and can only be ascertained by an accounting.

140. Defendants are experienced business entities that sought to profit from the disparity in bargaining power between themselves and Plaintiff. Defendants took advantage of this disparity by deliberately providing Plaintiff with misinformation about the subject loan.

141. Defendants, and each of them, have wrongfully diverted money and attempt to divert the property of Plaintiff for personal profit and gain, and in derogation of the future rights and interest of the plaintiff.

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

142. Defendants, and each of them sought to gain unfair advantage over Plaintiff in doing the act herein complained of, and in so doing said acts as aforesaid, breached the covenant of good faith and fair dealing implicit in every contract made and entered into in the State of California.

143. Plaintiff seeks judicial imposition of a constructive trust on the assets wrongfully misappropriated by Defendants, and each of them, and that it be required to account for all such assets received, and further disgorge said assets.

Wherefore, plaintiffs pray judgment against defendants, and each of them, as more particularly set forth below;

SIXTEENTH CAUSE OF ACTION<br>(DECLARATORY RELIEF)

144. Plaintiffs reallege paragraphs 1 through 100 as though fully set out and incorporated by reference herein as though fully set forth herein against each and every defendant.

145. Plaintiff alleges that an actual controversy exists as to the following issues:

    a.    Plaintiffs contend that the Mortgage - Note and Deed of Trust on the Schillingsburg property is void and subject to rescission, or, minimally, invalid, based upon defendants failure to comply with the law and other regulatory statutes requiring representation of disclosure requirements, and other statutory provisions described herein above. However, defendants contend that Bank has the right to pursue its remedies under the Note and Deed of Trust.

    b.    Plaintiff contends that defendants failed to provide Plaintiffs with full disclosure of the terms of the loan pursuant to statutory provision alleged in this Complaint, and as such the entire loan finance transaction is subject to rescission. However, Defendants contend that full disclosure was made to plaintiff, and the terms of the loan agreement are valid and in full legal force; and

    c.    Plaintiff contend that Defendants sold a loan to Plaintiffs for which they were not qualified based upon their actual income, credit history, and debt asset ratio, and as such the entire loan and Note must be rescinded. However, defendants contend

26

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

1        that Plaintiffs were qualified for the loan and they are still responsible for

2        payments under the Note.

3  146.    Plaintiff desires judicial determination of their rights and duties, and a declaration as to the

4        validity for the finance loan agreement, financed loan transaction, and Defendants right to

5        proceed with remedies to foreclose on the note, inclusive of a non-judicial foreclosure of

6        the subject property.

7  147.    Plaintiff alleges that a judicial declaration is necessary and appropriate at this time under

8        the circumstances in order that Plaintiff may ascertain their rights under the Note and as to

9        Defendants' right to proceed with its remedies, inclusive of the non-judicial foreclosure of

10       the subject property.

11  148.   Plaintiff alleges that Defendants actions have undermined their rights to the Subject

12       Property, Schillingsburg, and have interfered, and continue to interfere with Plaintiff's

13       right of possession as the owner of the Subject Property, Schillingsburg.

14  149.   By the actions above and set forth herein, Plaintiff has a strong likelihood of prevailing on

15       the merits of the case.  Plaintiff request that this court grant a Preliminary Injunction and

16       Temporary Restraining Order and injunctive relief under CCP § 527 and Cal. Rules of

17       Court § 3.1150, first as to any action to set the subject property for a non-judicial sale

18       pursuant to foreclosure proceedings, and secondary a permanent injunction precluding

19       defendants from engaging in the wrongful conduct herein in the future.

20       Wherefore, plaintiffs pray judgment against defendants, and each of them, as more

21  particularly set forth below;

22                        **PRAYER**

23       WHEREFORE, plaintiffs having set forth the claims for relief against defendants,

24  respectfully pray that this Court grant the following relief against them as follows:

25      1. Actual economic and non-economic damages;

26      2. For a declaration of the rights and duties of the parties relative to the Plaintiffs' home

27  to determine the actual status and validity of the loan, Deed of Trust, and Notice of Default;

28

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

1    3. For a temporary restraining order enjoining all Defendants, their agents, assigns, and all

2    person acting under, or in concert with them, from foreclosing on Plaintiffs homeowner from

3    conducting a trustees sale or causing a trustees sale to be conducted relative to Plaintiffs home

4    immediately;

5    4. For a preliminary injunction and permanent injunction enjoining all Defendants, their

6    agents, assigns, and all person acting under, or in concert with them, from foreclosing on

7    Plaintiffs homeowner from conducting a trustees sale or causing a trustees sale to be conducted

8    relative to Plaintiffs home;

9    5. Rescission of the entire Mortgage and note amounting to clear title to property with

10   fixtures as a result of the aforementioned;

11   6. As a result of the aforesaid violations, Defendants are liable to Plaintiffs in an amount

12   not less than $200.00 and up to $2000.00, for each and every violation, and

13   7. Damages as a result of the aforementioned violations, to be fixed and awarded by the

14   Court, and

15   8. Damages for the Unfair and Deceptive Acts and Practices in the amount of $4000.00

16   for each and every violation, and

17   9. Damages in the amount of three times the interest paid and clear title to the property

18   stemming from the usurious interest, and

19   10. Judgment against Plaintiff for return of the down payment, and other payments, as

20   well as interest on the above amount, and

21   11. Cost of litigation as provided in Title 15 United States Code, Section 1601 et. seq.;

22   12. Cancellation of the sale and restitution of the home to Plaintiffs;

23   13. For an Order enjoining Defendants from continuing to violate the statutes alleged

24   herein;

25   14. For an Order, requiring Defendants to reinstate Plaintiff on title to their Property, and

26   or restraining Order preventing Defendants and its agents, employees, officers, attorneys, and

27   representatives from engaging in or performing any of the following acts: (i) offering, or

28

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

1    advertising this property for sale and (ii)attempting to transfer title to  this property and or (iii)

2    holding any auction therefore;

3          15.  For punitive damages;

4          16.  Cost and reasonable attorney's fees pursuant to California Civil Code § 1717, §

5    1788.30(b), § 1788.30(c);

6          17.  For such other and further relief as the court may deem just and proper.

7    Dated: October 2, 2012                                          LAW OFFICES OF PAUL J. SMOOT

8

9                                                                  Paul J. Smoot, Attorney for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES, REQUEST FOR TEMPORARY RESTRAINING ORDER &
PRELIMINARY INJUNCTION AND DECLARATORY RELIEF