IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANTHONY CARUSO, an individual,
MARIA CARUSO, an individual,

    Plaintiffs,

v.

FNB BANCORP, a California corporation,
FIRST NATIONAL BANK OF NORTHERN
CALIFORNIA, a National Banking
Association, FIRST AMERICAN TITLE
INSURANCE COMPANY, a California
corporation, RANDY BRUGIONI, an
individual, and DOES 1–10, inclusive,

    Defendants.
  /

No. C 12-05635 WHA

**ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION
TO DISMISS AND DENYING
DEFENDANTS' MOTION TO
STRIKE PUNITIVE DAMAGES**

**INTRODUCTION**

In this predatory lending action alleging seventeen claims under federal and state law, defendants move to: (1) dismiss all claims asserted against them in the complaint; and (2) strike plaintiffs' claim for punitive damages. For the reasons set forth below, defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Defendants' motion to strike is **DENIED**.

**STATEMENT**

Plaintiffs Anthony and Maria Caruso were referred to defendant FNB Bancorp, doing business as First National Bank of Northern California (FNB), for a loan on their commercial property located on White Road in San Jose and a construction loan for their primary residence

located on Schillingsburg Avenue. Once these loans were in place, Mr. Caruso was allegedly solicited by defendant Randy Brugioni, the vice president of FNB, who allegedly held himself out as a senior financial advisor and represented to Mr. Caruso that he, Brugioni, could and would act as plaintiffs' financial advisor for real estate ventures (Compl. ¶ 25). Brugioni allegedly insisted that he could better serve plaintiffs' personal financial goals as their real estate advisor from "the inside," and, in 2007, Brugioni came to Mr. Caruso with an opportunity to solidify his "children's college education." Relying on Brugioni's analysis and advice, plaintiffs refinanced the White Road property in order to purchase an additional commercial property on Santa Clara Street (*id*. at ¶ 27).

In 2008, the construction on Schillingsburg was completed and plaintiffs requested that the construction loan be converted to a conventional loan. Defendant FNB, through defendant Brugioni, advised against converting the debt to a conventional loan and stated that the terms would not be restated until there was a more opportune time in the market (*id*. at ¶ 29). Consequently, the debt was not converted. From 2008 until 2009, plaintiffs put the Schillingsburg property up for sale. Throughout this time, plaintiffs were in constant contact with FNB and Brugioni. Plaintiffs met with Brugioni on at least three occasions to discuss plaintiffs' real estate investments and finances. In March 2010, plaintiffs informed defendants FNB and Brugioni that plaintiffs had exhausted their savings and retirement accounts (*id*. at ¶ 30).

In April 2010, FNB converted the Schillingsburg 2007 construction loan to a conventional loan. Plaintiffs (as borrowers) executed in favor of FNB (as lender) a promissory note in the principal amount of $2,677,406. In connection with the note, plaintiffs executed a deed of trust in favor of FNB encumbering the Schillingsburg property as security. Even though plaintiffs had no active income, the complaint alleges that plaintiffs were not required to complete a current, up-to-date loan application and were told by Brugioni that he would personally "shepherd" the conversion through the process (*id*. at ¶ 31).

In September 2011, plaintiffs contacted FNB/Brugioni regarding the possibility of obtaining a loan modification, as plaintiffs were falling behind on their payments.

2

Brugioni informed plaintiffs that no final agreement could be in place before the beginning of 2012. Shortly thereafter, plaintiffs received a notice that FNB filed a lawsuit and demanded a receiver be installed for the White Road and Santa Clara properties. In order to facilitate a loan modification, all three properties were put up for sale by plaintiffs. FNB then ordered default notices to be recorded. When the Santa Clara Street property sold, Brugioni immediately recanted the offer to modify and stated that $200,000 was needed to modify the remaining two loans on Schillingsburg and White Road. The Schillingsburg property was then sold at a trustee's sale by public auction in October 2012 (Br. 5).

On October 3, 2012, plaintiffs commenced an action against defendants in the California Superior Court, Santa Clara County. Plaintiffs brought seventeen state and federal claims, including violations of the Truth-in-Lending Act, fraud (both actual and constructive), negligence, quiet title, and declaratory relief. The action was then removed to federal court (Dkt. No. 1). Defendants FNB and Brugioni now move to dismiss the complaint in its entirety and to strike plaintiffs' request for punitive damages.

\*         \*         \*

As plaintiffs have withdrawn their fourth claim (disclosure violations pursuant to 12 C.F.R. 226) and eleventh claim (injunctive relief) in their opposition, this order need not consider them. The fourth and eleventh claims are so **DISMISSED**.

**ANALYSIS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8(a) requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). At a minimum, a plaintiff must provide "the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Ibid*.

3

1. **THE GENERAL RELEASE.**

As an initial matter, defendants argue that plaintiffs released all claims against FNB and Brugioni on December 22, 2011, when plaintiffs entered into a stipulation which was approved by the California Superior Court, Santa Clara County. The stipulation was related to the loans on plaintiffs' two commercial properties — Santa Clara Street and White Road.

*First*, the stipulation is outside the scope of the pleading, and, therefore, outside the scope of an appropriate Rule 12(b)(6) analysis. Materials outside of the pleadings generally should not be considered without converting the motion to dismiss to a motion for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). *Second*, there is a question of fact as to whether claims regarding the Schillingsburg (residential) property were waived by the general release which pertained to litigation regarding the two commercial properties. Accordingly, at the pleading stage, this order declines to take judicial notice of the stipulation.

2. **VIOLATIONS OF TILA AND HOEPA.**

The first ten claims for relief allege violations of TILA and the Home Ownership and Equity Protection Act. TILA was enacted to protect credit consumers by mandating "meaningful disclosure of credit terms." 15 U.S.C. 1601(a). HOEPA amended TILA to provide specific protections for high-rate mortgages.

A. **TILA Damages Claims.**

TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrowers rights." Failure to satisfy TILA's requirements expose a lender to "statutory and actual damages [that are] traceable to a lender's failure to make the requisite disclosures." *Beech v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998).

A TILA claim for damages must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. 1640(e). According to our court of appeals, for statute of limitations purposes, the "occurrence of the violation" takes place on the "consummation of the transaction." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). Here, the transaction was consummated "on or about April 28, 2010" (Compl. ¶ 33). Therefore, plaintiffs had until

4

April 2011 to file their TILA claim for damages. Plaintiffs, however, filed their TILA claim for damages on October 3, 2012, in the California Superior Court, County of Santa Clara (Dkt. No. 1). Accordingly, plaintiffs' TILA claims for damages is time-barred absent equitable tolling.

As explained in *King*, TILA's one-year limitation period may be extended through equitable tolling:

> [T]he limitation period in Section 1640(e) runs from the date of consummation of the transaction but . . . the doctrine of equitable tolling may, in appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action. Therefore, as a general rule the limitations period starts at the consummation of the transaction. The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly.

784 F.2d at 915. "Equitable tolling may be applied if, despite due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000).

Here, FNB's alleged TILA disclosure violations — including its failure to make required disclosures clearly and conspicuously in writing, and provide required statements within the documents — occurred, if at all, by the time of the loan transaction in April 2010. Plaintiffs allege that when the promissory note and deed of trust were executed, the purported mortgage was never provided to them (Compl. ¶ 33). However, "[plaintiffs] were in full possession of all information relevant to the discovery of a TILA violation and Section 1640(a) claim on the day the loan papers were signed." *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003). In addition, the complaint alleges that plaintiffs knew when they received their escrow documents that certain documents were absent (Compl. ¶ 33). Although plaintiffs "did not consider the matter because defendant Brugioni was shepherding their loan conversion," such an allegation is insufficient to invoke equitable tolling. Plaintiffs have failed to allege what facts were hidden that prevented them from discovering their claim, and how these hidden facts relate to the TILA violations FNB allegedly committed. Accordingly,

defendants' motion to dismiss plaintiffs' TILA claims for damages is **GRANTED WITH LEAVE TO AMEND**.

### B.     TILA Rescission Claims.

Generally, TILA provides that a borrower has until midnight of the third business day following the consummation of the loan transaction to rescind the transaction. 15 U.S.C. 1635(a). A borrower's right of rescission, however, is extended from three days to three years if the lender (1) fails to provide notice of the borrower's right of rescission or (2) fails to make a material disclosure. 12 C.F.R. 226,23(a)(3). Section 1653(f) of TILA provides:

> An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section nor any other disclosures required under this part have not been delivered to the obligor.

The date of the loan consummation was April 28, 2010. Thus, plaintiffs' rescission is within the three-year period *if* the three-year period applies to this action. This order finds that it does not.

Defendants argue the plaintiffs cannot avail themselves of the three-year period because plaintiffs received their notice of right of rescission and disclosure statement, as evidenced by the documents allegedly signed by plaintiffs indicating defendants' compliance. In light of Exhibits C, D, and E appended to defendants' motion to dismiss, it would appear as if plaintiffs' claims under TILA would be doomed. However, these exhibits are outside the pleadings and will not considered now. Nonetheless, the motion to dismiss is granted on two different grounds.

*First*, the property has already been sold. Generally plaintiffs cannot seek rescission once the property has been sold. *See* 15 U.S.C 1635(f) (the right to rescission under these claims end when the property is sold). At oral argument, however, plaintiffs' counsel alluded to the fact that the property was actually purchased by a corporation, 531 Oak LLC, which they allege is owned by defendant FNB. Given these alleged circumstances, the fact that the property has already been sold may not prove dispositive. *Second*, "plaintiff must allege an ability to tender in order to state a claim for rescission under TILA and Regulation Z." *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1171 (9th Cir. 2003). Nowhere in the complaint do plaintiffs allege that

6

1 they have tendered or have the ability to tender the principal balance of the loan. This is
2 required. Accordingly, defendants' motion to dismiss plaintiffs' rescission claims is **GRANTED**
3 **WITH LEAVE TO AMEND**.

### C. HOEPA Claims.

Plaintiffs also seek damages and rescission of their loan under HOEPA. HOEPA applies to a mortgage secured by the consumer's principal dwelling if "the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities . . . or the total points and fees payable by the consumer at or before closing will exceed greater of (i) 8 percent of the total loan amount; or (ii) $400." 15 U.S.C. 1602 (aa). HOEPA is not itself an independent regulatory scheme, but rather it is an amendment to TILA codified at 15 U.S.C. 1639.

This order finds that plaintiffs do not sufficiently allege that the loan in question is a HOEPA qualifying loan; indeed, the complaint is devoid of *any* details pertaining to the particular mortgage loan in this action. Furthermore, claims under HOEPA are governed by the same statute of limitation as are claims under TILA — three years for claims seeking rescission and one year for claims seeking damages (absent equitable tolling). 15 U.S.C. 1635(f), 1640(e); 12 C.F.R. 226.23(a)(3). Like plaintiffs' TILA claims, their allegations under HOEPA are time-barred, and thus defendants' motion to dismiss plaintiffs' HOEPA claims is **GRANTED WITH LEAVE TO AMEND**.

### 3. NEGLIGENCE.

To establish a negligence claim "it must be shown that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the duty, and (3) the breach was a proximate or legal cause of the plaintiff's injuries." *Gilmer v. Ellington*, 159 Cal. App. 4th 190, 195 (2008).

Plaintiffs' negligence claim is based upon defendants' alleged duty to "exercise due care" in making, recommending, and facilitating loans by ensuring that plaintiffs had the ability to repay the loan (Compl. ¶ 102). Defendants attack plaintiffs' negligence claim on the ground that a lender does not owe a duty of care to a borrower.

7

Defendants are correct in that "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." There are exceptions, however, and a financial institution may be liable "when the lender actively participates in the financed enterprise beyond the domain of the usual money lender." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991).

The complaint alleges that FNB, through Brugioni, "represented itself as and held itself out as plaintiffs' financial advisor" (Compl. ¶ 90). Plaintiffs allege that Brugioni "actively solicited" plaintiffs and "[n]ot only did Brugioni identify, recommend and facilitate (1) investment strategies, and (2) real property purchases for the plaintiffs, he directed and/or completed the loan documentation required for underwriting and appraisals" (*ibid.*). The complaint therefore alleges that defendants' active participation went "beyond the domain of the usual money lender" and, consequently, defendants may have owed plaintiffs a duty of care.

Possibly little of this is really true, but at the pleading stage, we must accept all well-pled allegations as true. Assuming Brugioni did in fact hold himself out as plaintiffs' financial advisor, then defendants would have owed a duty of care to plaintiffs. In the circumstances alleged, failing to assess plaintiffs' ability to repay the loan states a plausible claim for negligence. Accordingly, defendants' motion to dismiss plaintiffs' negligence claim is **DENIED**.

**4. CALIFORNIA CIVIL CODE SECTIONS 1572 AND 1573: ACTUAL AND CONSTRUCTIVE FRAUD.**

Plaintiffs' twelfth and fifteenth claims focus on the origination of the 2010 loan and argue defendants' conduct was fraudulent. Pursuant to Rule 9(b), in order to state a claim for fraud, a party must state with particularity the circumstances constituting fraud. Thus, allegations under Rule 9(b) must be accompanied by the who, what, when, where, and how. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Here are the details of the analysis.

8

### A. Breach of Fiduciary Duty/Constructive Fraud.

To state a claim for constructive fraud under California law, a party must allege: (1) a fiduciary relationship; (2) an act, omission, or concealment involving a breach of that duty; (3) reliance; and (4) resulting damage. *Assilzadeh v. California Federal Bank*, 82 Cal. App. 4th 399, 414 (2000). Plaintiffs allege that FNB, through Brugioni, represented to Anthony Caruso that he, Brugioni, could and would act as plaintiff's financial advisor for real estate ventures and would be willing to proactively give investment advice and analysis, and, therefore, a fiduciary relationship existed between plaintiffs and defendants (Compl. ¶¶ 90– 91). The complaint further alleges that defendants breached their fiduciary duty by failing to disclose plaintiffs' inability to repay the loan; defendants conduct was intended to create (and did in fact create) a relationship of confidence and trust with plaintiffs regarding investment advice and analysis; and, as a direct, proximate, and foreseeable result of the failure to provide proper notice, plaintiffs are subject to loss of property and loss of use of property and other damages (*id*. at 92, 93, 99).

Defendants argue that lenders are not fiduciaries to borrowers as a matter of law. "Absent special circumstances, a loan transaction is at arms-length and there is no fiduciary relationship between the borrower and the lender." *Nymark*, 231 Cal. App. 3d at 1096. Here, the complaint alleges facts showing that the loan transaction was not at arms-length. Assuming Brugioni did in fact hold himself out as plaintiffs' financial advisor, then defendants could have owed a fiduciary duty to plaintiffs. Because a fiduciary has an obligation to act in its clients' best interests, failing to disclose plaintiffs' inability to repay the loan states a plausible claim for breach of fiduciary duty. Plaintiffs have alleged a breach of the fiduciary relationship, reliance on the relationship, and damages. Accordingly, defendants' motion to dismiss plaintiffs' claim for breach of fiduciary duty/constructive fraud claim is **DENIED**.

### B. Actual Fraud.

Fraudulent concealment under California law requires that: (1) the defendant concealed a material fact; (2) the defendant was under a duty to disclose the fact to plaintiff; (3) the defendant concealed or suppressed the fact with an intent to defraud; (4) the plaintiff was

9

unaware of the fact and would have acted if he or she had known about it; (5) the concealment caused the plaintiff to sustain damage. *Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1156 n.3 (9th Cir. 1999).

The complaint alleges that defendants failed to inform plaintiffs that they should not have qualified for the loan with monthly payments that would, and did, outstrip plaintiffs' financial ability to generate revenue (Compl. ¶¶ 113, 116). Plaintiffs allege that as their financial advisor, FNB (through Brugioni) had a duty to disclose to plaintiffs that they could not qualify for the subject loan, but instead failed to disclose this information. Plaintiffs further allege that defendants had "exclusive knowledge of the material fact," and had it been known, plaintiffs "would not have obligated themselves to a loan that they could not realistically afford" (*id*. at ¶ 166). Lastly, the complaint alleges as a direct, proximate, and foreseeable result of defendants' concealment, plaintiffs were subjected to "a loss of property and loss of use of property and other damages" (*id*. at ¶ 99). These allegations are sufficient to state a claim for relief pursuant to Rule 9(b). Consequently, defendants' motion to dismiss plaintiffs' fraud claim is **DENIED**.

\*     \*     \*

Because this order finds that plaintiffs have set forth facts supporting their contention that defendants acted with "oppression, fraud, or malice," plaintiffs' claim for punitive damages is proper. Defendants' motion to strike plaintiffs' claim for punitive damages is accordingly **DENIED.**

### 5. QUIET TITLE.

To state a claim to quiet title, a complaint must be verified and include (1) a legal description of the property and its street address or common designation, (2) the title of the plaintiff, (3) the adverse claims to the title of the plaintiff, (4) the date as of which the determination is sought, and (5) a prayer for the determination of the title of the plaintiff against the adverse claims. Cal. Code Civ. Pro. Section 761.020. Plaintiffs' claim fails on all accounts.

Plaintiffs' claim for quiet title has no merit because it alleges that the basis of plaintiffs' interest in the title is a deed of trust from defendants (Compl. ¶ 107); however, the deed was executed by plaintiffs in favor of FNB as a security interest (Br. 3). Additionally, plaintiffs

10

have failed to allege unconditional tender, which is required to maintain an action to quiet title in California. *Arnold Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575, 578 (1984). Accordingly, defendants' motion to dismiss plaintiffs' claim for quiet title is **GRANTED WITH LEAVE TO AMEND**.

### 6. CALIFORNIA CIVIL CODE SECTION 2923.5.

California Civil Code Section 2923.5 requires a lender, before filing a notice of default, to notify the borrower and assess options for modification. Plaintiffs' Section 2923.5 claim is invalid inasmuch as the statute applies only to mortgages or deeds of trust recorded from January 1, 2003, through December 31, 2007. The deed of trust here was recorded in 2010. Furthermore, "the remedy for noncompliance [with Section 2923.5] is a simple postponement of the foreclosure sale, nothing more." *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 214 (2010). As the property has already been sold, defendants' motion to dismiss plaintiffs' Section 2923.5 claim is therefore **GRANTED WITHOUT LEAVE TO AMEND**.

### 7. DECLARATORY RELIEF.

Plaintiffs' claim for declaratory relief requests that the Court enjoin the foreclosure of the property (Compl. ¶ 149). As the trustee's sale has already been completed, this claim for relief is **MOOT**.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss all claims asserted in the complaint is **GRANTED IN PART AND DENIED IN PART**. Defendants' motion to strike plaintiffs' claim for punitive damages is **DENIED**. Plaintiffs may seek leave to file an amended complaint by **NOON ON JANUARY 10, 2013**, as to claims seeking quiet title and relief for violations of TILA/HOEPA. A proposed amended complaint must be appended to the motion and plaintiffs must plead their best case. The motion should clearly explain how the amendment to the

1  complaint cure the deficiencies identified herein. Failing such a motion, answers are due by
2  **NOON ON JANUARY 30, 2013**.

4      **IT IS SO ORDERED.**

6  Dated: December 20, 2012.

                                        WILLIAM ALSUP
                                        UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California